UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN BERNSTEIN,<br><br>Plaintiff,<br><br>-against-<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION; ROBERT MERCEDES, in his Capacity as PRINCIPAL OF MIDDLE SCHOOL 390,<br><br>Defendants. | **COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff STEVEN BERNSTEIN, by and through his attorneys GLASS & HOGROGIAN LLP, as and for his Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1.  Plaintiff STEVEN BERNSTEIN ("Plaintiff" or "Bernstein"), a tenured physical education teacher formerly employed by the New York City Department of Education (NYCDOE), brings this action based on unlawful discrimination and for constructive discharge on the basis of his age in violation of the federal Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 2000e *et. seq.*, and on the basis of age and race discrimination in violation of the New York State and New York City Human Rights Law.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331, because this action involves federal claims for age discrimination under the ADEA.

1

3.  This Court has pendent subject matter jurisdiction over Plaintiff's state and city law age and race discrimination claims pursuant to the New York State and New York City Human Rights Law.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

5.  Plaintiff STEVEN BERNSTEIN is a resident of the State of New York and a physical education teacher formerly employed within the school system operated by the New York City Department of Education until November 2018.

6.  At all times relevant herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") is a city school district established under the laws of the State of New York and was Plaintiff's employer.

7.  At all times relevant herein, Defendant Principal ROBERT MERCEDES was and is the Principal of Middle School 390 ("MS 390") in the Bronx, New York. Upon information and belief of Plaintiff, Principal Mercedes is of Dominican national origin.

## FACTUAL ALLEGATIONS

8.  Mr. Bernstein was employed as a physical education and health teacher within the Defendant NYCDOE from 1996 through his constructive termination on November 26, 2018.

9.  Mr. Bernstein worked as a physical education teacher at MS 390 within District 10 in the Bronx from September 2009 until November 26, 2018.

10. Despite being rated Satisfactory as a physical education teacher in the 2009-10 and 2010-11 school years, Mr. Bernstein was also reassigned by Defendant Mercedes to be a health teacher at MS 390 in the middle of the year, from December 2011 until November 26, 2018. Mr. Mercedes switched Mr. Bernstein's physical education classes with those of a health teacher Mr. Dill, who was not licensed to teach physical education.

11. Mr. Bernstein presently is 56 years old, born November 14, 1963.

12. As of the time of his constructive discharge in November 2018, Mr. Bernstein was one of the oldest staff members on the staff at MS 390, with significant seniority in the school system.

13. Since the 2013-2014 school year, the MS 390 administration, led by Principal Mercedes, has been targeting older teachers and other staff in favor of younger staff members at the school.

14. During the 2013-2014 school year, several white and black older teachers were asked to leave the school or were pushed out by Principal Mercedes and his administration. For example, a general education teacher, who is approximately 64 years old, Linda White, who co-taught with a younger special education teacher, received consistently negative ratings during the 2013-2014 school year, despite her younger Hispanic counterpart Mr. Alvarez receiving positive ratings. This ultimately led to Ms. White leaving the school. Additionally, younger Hispanic teachers who were ineffectively rated were not pushed out of the school, including Amanda Dreeban, Victor Vargas, Teodoro Thimodent, and Anna Bermudez.

15. This pattern has continued since the 2013-2014 school year, as Principal Mercedes has replaced a significant percentage of the older staff in favor of younger and Hispanic teachers.

16. In March 2013, upon information and belief, Principal Mercedes received notification from his higher up DOE supervisors that he had to reduce his staff because of budget cuts. He specifically targeted older non-Hispanic employees to leave the school, including George Swander, Myrna Kinkle, Meaghan Canavan, Susan Carr-Lagomarsini, Eileen Kojes, Darryl Mcknight, Juanita Murray, Harriet Harewood, Linda White, and Claire Scesney–Lundahl.

17. Upon information and belief, Principal Mercedes set out to target at least 10 non-Hispanic veteran staff members with relatively high salaries. He ultimately succeeded in having most of these staff members removed from their positions through trumped up charges, forced retirement, or forced medical leave.

18. Principal Mercedes began targeting Mr. Bernstein during the summer of 2011, when several personal items belonging to Mr. Bernstein were removed from the gym office at the direction of Principal Mercedes (including a special lumbar support chair, which Principal Mercedes discarded) without allowing or requesting that Mr. Bernstein remove the items himself.

19. On or around October 2011, Principal Mercedes attempted to have Mr. Bernstein removed from his volunteer softball coaching job by substantiating a false complaint against Mr. Bernstein to the DOE Office of Special Investigation.

20. Starting in the fall of 2011, Principal Mercedes began an apparent campaign to harass Mr. Bernstein with many unwarranted disciplinary letters each year and almost all ineffective ratings. Prior to that fall of 2011, during more than 15 years as a teacher of employment with the NYCDOE, Mr. Bernstein received no disciplinary letters and all effective or satisfactory ratings.

21. In December of 2011, Principal Mercedes changed Mr. Bernstein's position to include from physical education teacher to health teacher mid-year.

22. In September 2012, Principal Mercedes withheld Mr. Bernstein's sabbatical application so that it never reached the Superintendent for approval and signature.

23. Beginning in the fall of 2013, Principal Mercedes continually harassed Mr. Bernstein regarding his wearing physical education-teacher appropriate shorts at work, although there was no dress code in the school, by giving him several disciplinary letters to file about the issue.

**2015-16 School Year**

24. Beginning in November 2015, Principal Mercedes consistently asked Mr. Bernstein when he was going to retire from his school and the NYCDOE when calling him into several meetings to the principal's office. He did this at least 3 times total in different contexts.

25. In the fall of 2015, Principal Mercedes tailored a per session after-school CHAMPS sports position so that Mr. Bernstein was not eligible for the position, by including his school rating as a criterion for the position, even though he was the most qualified for the position. Mr. Bernstein was the only teacher that had CPR, First Aid and Concussion Training, which is required for all sports positions.

26. On or about November 9, 2015, Principal Mercedes removed all of Mr. Bernstein's physical education classes from his schedule and gave them to a substitute ATR teacher, and Mr. Bernstein was given a substitute schedule, including math classes outside his license area.

27. When assigned to this out of license math class, Mr. Bernstein was injured in the classroom, causing him a herniated disc in his neck, that caused him to miss work and his coaching duties until his return on March 1, 2016.

28. When Mr. Bernstein returned to work, Principal Mercedes kept Mr. Bernstein away from physical education classes, and only gave him health classes. He also gave Mr. Bernstein a

curriculum called Adaptive PE for classes for students with mental and physical disabilities, even though Mr. Bernstein was assigned no students with mental or physical handicaps.

29. In the 2015-16 school year, Principal Mercedes caused Plaintiff to be rated Ineffective overall on his evaluations for the first time in his teaching career, thereby subjecting him to a Teacher Improvement Plan for the following 2016-17 school year, even though he was assigned to teach a curriculum that did not exist.

30. In the 2015-16 school year, Principal Mercedes gave Plaintiff false disciplinary letters on March 1, 2016, and June 27, 2016.

31. In the Fall of 2018, Plaintiff discovered that Principal Mercedes had interfered with and had not approved his Line of Duty disability time between November 2015 and March 2016.

### 2016-17 School Year

32. During the 2016-17 school year, Principal Mercedes added false negative observations in Mr. Bernstein's employment file without conducting any evaluations to support such observations.

33. In May 2017, Principal Mercedes refused to allow Mr. Bernstein's observation to be videotaped, despite Mr. Bernstein's request that these observations be videotaped. Principal Mercedes suggested to Mr. Bernstein that the observation was being recorded, but it was not.

34. Mr. Bernstein also received false disciplinary letters dated February 12, 2017, and March 17, 2017.

### 2017-18 School Year

35. In June 2018, Principal Mercedes falsely docked Mr. Bernstein for a day from his sick bank when he was actually in attendance at school.

36. In June 2018, Principal Mercedes refused to sign off on a retroactive medical leave for Mr. Bernstein.

**2018-19 School Year**

37. Principal Mercedes gave Mr. Bernstein a disciplinary notice dated September 13, 2018.

38. In November 2018, Principal Mercedes gave Mr. Bernstein two disciplinary letters, falsely accusing and substantiating an allegation of corporal punishment and verbal abuse against Mr. Bernstein by letter dated November 21, 2018 and another disciplinary letter dated November 13, 2018, for an allegation from the prior school year.

39. Principal Mercedes also threatened Mr. Bernstein with an Unsatisfactory end of year rating based on that allegation from the prior 2017-18 school year.

40. Given the litany of disciplinary letters he was receiving since 2016 until the fall of 2018, Mr. Bernstein was in continual fear that his job was in jeopardy due to continued harassment and threats from Principal Mercedes.

41. The ongoing hostile work environment by Principal Mercedes persisted for so long against Mr. Bernstein, with a pattern of false disciplinary letters and negative observations, that he felt no alternative but to leave his position and was constructively discharged effective November 26, 2018.

42. Upon information and belief, Principal Mercedes exercised the same pattern with other older non-Hispanic teachers he sought to drive away from the school, including Harriet Harewood and Juanita Murray.

43. Mr. Bernstein also applied for multiple positions at other schools and was not able to secure another position elsewhere within the NYCDOE.

44. Mr. Bernstein also continues to suffer from physical and psychological stress including depression, knee pain and neck pain.

45. In March 2019, after retiring from the NYCDOE, Mr. Bernstein was denied coaching and substitute positions, due to false and pending charges against him that Principal Mercedes substantiated against him *after he retired*, fully knowing that they were not true.

46. Based on the harassment and discriminatory behavior of Principal Mercedes and his administration towards him, Mr. Bernstein was constructively discharged on November 21, 2018 and he has not been able to do any per diem, coaching, or teaching work for the NYCDOE since.

47. Mr. Bernstein filed a dual filed complaint with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC") based on ae discrimination on or about February 4, 2019.

48. Mr. Bernstein subsequently administratively withdrew his complaint to request a right to sue letter from the EEOC so he could pursue this action in federal court, which he received dated October 1, 2019, a copy which is annexed as Exhibit A.

## **FIRST CLAIM FOR RELIEF**

**(Claims for Violation of the ADEA — Discrimination and Retaliation Based on Age Against Defendant NYCDOE)**

49. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

50. Defendant NYCDOE, through the aforementioned conduct, has violated the ADEA by discriminating against Plaintiff and constructively discharging him based on his age.

## SECOND CLAIM FOR RELIEF

### (Claims for Violation of the New York State Human Rights Law — Discrimination Based on Age and Race against All Defendants)

51. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

52. Defendants, through the aforementioned conduct, have violated the New York State Human Rights Law by discriminating against Plaintiff based on his age and race (Caucasian).

## THIRD CLAIM FOR RELIEF

### (Claims for Violation of the New York City Human Rights Law — Discrimination Based on Age against All Defendants)

53. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

54. Defendants, through the aforementioned conduct, have violated the New York City Human Rights Law by discriminating against Plaintiff based on his age and race (Caucasian).

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for declaratory relief and damages as follows:

A. A declaratory judgment that Defendant NYCDOE is in violation of federal ADEA, and awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to the ADEA;

B. A declaratory judgment that all Defendants are in violation of the New York State Human Rights Law based on age and race, and awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive

    damages (to the extent available) pursuant to the New York State Human Rights Law;

C. A declaratory judgment that all Defendants are in violation of the New York City Human Rights Law based on age and race, and awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to the New York City Human Rights Law;

D. Awarding Plaintiff costs and reasonable attorneys' fees; and

E. Such other and further relief as to this Court may deem necessary, just and proper.

Dated:     New York, New York
            December 26, 2019

**GLASS & HOGROGIAN LLP**
Attorneys for Plaintiff Steven Bernstein
85 Broad Street, 18th Floor @ WeWork
New York, NY 10004
(212) 537-6859
By: *S/ Bryan D. Glass*
     Bryan D. Glass, Esq.