UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__11/9/2020__
```

-------------------------------------------------------------------X
                            :

STEVEN BERNSTEIN,                    :

                 Plaintiff,       :

                            :             19-cv-11816 (LJL)

       -v-               :

                            :        OPINION AND ORDER

NEW YORK CITY DEPARTMENT OF EDUCATION, :
et al.,                              :

                 Defendants.     :

                            :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendants New York City Department of Education ("DOE") and Robert Mercedes ("Mercedes") move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss age and race discrimination claims against them.

      For the following reasons, the motions to dismiss are granted.

## BACKGROUND

      The Court accepts the pleaded facts as true on a motion to dismiss.

      Plaintiff Steven Bernstein ("Plaintiff" or "Bernstein") was a tenured physical education teacher who was employed by the DOE from 1996 until November 26, 2018. Dkt. No. 1 ("Complaint or "Compl.") ¶¶ 1, 5, 9. Bernstein, who is Caucasian, was 55 years old at the time of his alleged constructive discharge. *Id*. ¶¶ 10-11, 52.

      Beginning in September 2009, Plaintiff worked as a physical education teacher at Middle School 390 ("MS 390") in Bronx, New York. *Id.* ¶ 9. In December 2011, he was reassigned to be a health teacher at MS 390 and continued in that position until November 26, 2018. *Id*. ¶ 10. Defendant Mercedes was and is the Principal of MS 390. *Id*. ¶ 7.

The centerpiece of Plaintiff's complaint is the allegation that "[s]ince the 2013-2014 school year, the MS 390 administration, led by Principal Mercedes, has been targeting older teachers and other staff in favor of younger staff members at the school."  *Id.* ¶ 13.  In service of that general allegation, Plaintiff identified a number of older white and black teachers whom he claims were pushed out of the school by Mercedes in favor of younger Hispanic teachers.  *Id.* ¶¶ 14-16.  He claims, for instance, that a 64-year-old general education teacher left the school after receiving consistently negative ratings during the 2013-2014 school year while her younger Hispanic counterpart received positive ratings.  *Id.* ¶ 14.  In 2013, Mercedes allegedly targeted at least ten non-Hispanic veteran staff members with relatively high salaries and "ultimately succeeded in having most of these staff members removed from their positions through trumped up charges, forced retirement, or forced medical leave."  *Id.* ¶ 17.

Plaintiff alleges that Mercedes began to target him during the summer of 2011 when several personal items belonging to Plaintiff were removed from the gym office at Mercedes' behest—including a special lumbar support chair that was discarded—without Plaintiff having the opportunity to move the items himself.  *Id.* ¶ 18.  In or around October 2011, Mercedes attempted to remove Plaintiff from the volunteer softball team he coached by lodging a false complaint with the DOE Office of Special Investigation.  *Id.* ¶ 19.  In the fall of 2011, Mercedes began "an apparent campaign to harass Mr. Bernstein" by issuing disciplinary letters and by rating him ineffective in nearly all categories even through prior to that time—and during more than fifteen years as a teacher with the DOE—Plaintiff had not received any disciplinary letters and had received only effective or satisfactory ratings.  *Id.* ¶ 20.  In December 2011, Mercedes changed Plaintiff's position from physical education teacher to health teacher.  *Id.* ¶ 21.  In September of 2012, when Bernstein sought sabbatical, Mercedes allegedly withheld his

application so that it never reached the superintendent for approval and signature.  *Id*. ¶ 22.  And beginning in the fall of 2013, Plaintiff alleges that Mercedes "continually harassed" Bernstein "regarding wearing his physical education-teacher appropriate shorts at work, although there was no dress code in the school by giving him several disciplinary letters to file about the issue."  *Id*. ¶ 23.

There are no other examples of alleged mistreatment between the fall of 2013 and November of 2015.  *See id*. ¶¶ 23-24.

Plaintiff focuses particularly on the 2015-2016, 2016-2017, 2017-2018, and 2018-2019 school years during which he received disciplinary letters and unsatisfactory ratings, was assigned new (and he suggests less favorable) responsibilities, and generally suffered negative employment repercussions.  During the 2015-2016 school year, Plaintiff alleges that while Mercedes consistently asked him when he was going to retire from the school and the DOE, *id*. ¶ 24, Mercedes also: (1) "tailored a per session after-school CHAMPS sports position so that Mr. Bernstein was not eligible for the position, by including his school rating as a criterion for the position, even though he was the most qualified for the position," *id*. ¶ 25; (2) removed all of Bernstein's physical education classes from his schedule and gave them to a substitute teacher while giving Bernstein a substitute schedule, including math classes outside his license area, *id*. ¶ 26; (3) after Bernstein returned to work from a herniated disk in his neck that he sustained in the classroom while assigned to the out of license math class, kept Bernstein away from physical education classes,  assigned him only health classes, and gave Bernstein a curriculum called "Adaptive PE" for classes for students with mental and physical disabilities even though Bernstein was assigned no students with mental or physical disabilities, *id*. ¶¶ 27-28; (4) caused Bernstein to be rated "Ineffective" overall on his teacher evaluations, thereby subjecting him to a

"Teacher Improvement Plan" for the following year "even though he was assigned to teach a curriculum that did not exist," *id*. ¶ 29; (5) gave Bernstein false disciplinary letters on two occasions, *id*. ¶ 30; and (6) interfered with and did not approve Bernstein's "Line of Duty" disability time when he was out of work due to the neck injury, *id*. ¶ 31. Plaintiff did not become aware of this alleged interference until the fall of 2018. *Id*.

During the 2016-2017 school year, Plaintiff alleges that Mercedes added negative observations to his file "without conducting any evaluations to support such observations." *Id*. ¶ 32. Further, Mercedes refused Bernstein's request that his observations be videotaped and gave him two additional false disciplinary letters. *Id*. ¶¶ 32-34.

During the 2017-2018 school year, Mercedes falsely docked Bernstein for a day from his sick bank when Bernstein was actually in attendance at school and refused to sign off on a retroactive medical leave for Bernstein. *Id*. ¶¶ 35-36.

During the 2018-2019 school year, Mercedes gave Bernstein a disciplinary notice and three additional disciplinary letters, and threatened him with an "Unsatisfactory" year-end rating. *Id*. ¶¶ 37-39. Plaintiff describes living in "continual fear" that his job was in jeopardy, given the litany of disciplinary letters he received from 2016 until the fall of 2018. *Id*. ¶ 40.

Plaintiff ultimately left his position on November 21, 2018. *Id*. ¶ 41. He alleges that he did so because he feared for his job security and because of the hostile work environment perpetuated by Mercedes against him. *Id*. ¶¶ 40-41. He asserts that his departure was a constructive discharge. *Id*. ¶ 46. Plaintiff alleges that since his departure from MS 390, he was not able to secure another position elsewhere with the DOE, *id*. ¶ 43, and after retiring from the DOE, he was denied coaching and substitute positions in March 2019 due to false and pending charges that Mercedes substantiated against him after he retired, *id*. ¶ 45. He also alleges that he

suffers from physical and psychological stress. *Id*. ¶ 44. He also claims, upon information and belief, that Mercedes "exercised the same pattern with other older non-Hispanic teachers he sought to drive away from the school." *Id*. ¶ 42.

On the basis of those allegations, Plaintiff brings claims against DOE for age discrimination, retaliation, and constructive discharge in violation of the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621 *et seq*., and against DOE and Mercedes for age and race discrimination in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code § 8-101 *et seq.*[1]

## PROCEDURAL HISTORY

On or about April 23, 2019, Plaintiff filed a dual complaint with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") based on age discrimination. Dkt. No. 11-3. Plaintiff subsequently administratively withdrew his complaint in order to request a right to sue letter from the EEOC, which he received dated October 1, 2019. Compl. ¶ 48. He filed his action with this Court on December 26, 2019. Dkt. No. 1. The action was transferred to the undersigned on February 6, 2020.

DOE filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on March 12, 2020, Dkt. No. 11, and Mercedes filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on March 30, 2020, Dkt. No. 19. Plaintiff filed one opposition brief to both motions to dismiss on April 20, 2020. Dkt. No. 22. On May 18, 2020, Defendants filed a joint reply brief in support of their motions to dismiss. Dkt. No. 25.

---

[1] Only the first paragraph of the Complaint refers to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.* Title VII is not mentioned again in the claims for relief. On June 15, 2020, Plaintiff advised the Court that he was no longer pursuing his Title VII race discrimination claims. Dkt. No. 28.

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Infinitives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

In ruling on Defendants' motions to dismiss, the Court may consider not only the Complaint but also Plaintiff's "relevant filings with the EEOC and other documents related to plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either incorporate[d] by reference or are integral to and solely relie[d] upon by the complaint." *Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (internal citation and quotation marks omitted).

## DISCUSSION

Defendant DOE makes several arguments in favor of dismissal:  (1) Plaintiff's claims under the ADEA are mostly barred by the statute of limitations; (2) Plaintiff fails to state a claim for discrimination and retaliation claims under the ADEA; (3) Plaintiff fails to state a claim for constructive discharge under the ADEA; (4) Plaintiff has failed to exhaust administrative remedies with respect to his ADEA retaliation claim; (5) Plaintiff fails to state a claim for age or race discrimination under the NYSHRL and NYCHRL; and (6) Plaintiff's NYSHRL and NYCHRL claims must be dismissed for failure to file a timely notice of claim and as time-barred under New York's one-year statute of limitations under New York Education Law § 3813.  Dkt. Nos. 11, 25.  Defendant Mercedes argues that Plaintiff's NYSHRL and NYCHRL claims must be dismissed because they are partly time-barred under the applicable statute of limitations and because Plaintiff fails to state a claim for age or race discrimination.  Dkt. Nos. 19, 25.

The Court concludes that Plaintiff fails to state a claim for age discrimination, hostile workplace, and constructive discharge.  The Court declines to exercise supplemental jurisdiction over Plaintiff's age and race discrimination claims under the NYSHRL and NYCHRL.

## I.   ADEA Claims

### A.   Discrimination Claim

To establish a prima facie case of age discrimination, a plaintiff must show that (1) she is within the protected age group, (2) she was qualified for the position, (3) she experienced adverse employment action, and (4) such action occurred under circumstances giving rise to an inference of discrimination.[2]  *See Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020);

---

[2] Plaintiff was over 40 years old at all relevant times and thus was a member of a protected age group, 29 U.S.C. § 621(a), and there is no dispute that the Complaint adequately pleads he was qualified for his position.

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)).  Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *see also Kassner*, 496 F.3d at 238.

### 1.    Timeliness

Many of the acts that Plaintiff alleges constitute adverse employment actions are outside of the statute of limitations and are not independently actionable.  "Plaintiffs asserting claims under Title VII, the ADEA, or the ADA must first file a complaint with the [EEOC] or an equivalent state agency within 300 days of the allegedly discriminatory action." *Gindi v. N.Y.C Dep't. of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019); *see also* 29 U.S.C. § 626(d)(1). Plaintiff's EEOC charge was dual filed with the NYSDHR and EEOC on April 23, 2019.  *See* Dkt. No. 11-3.  Thus, Plaintiff's grievances about Defendants' conduct from 2011 to 2013, his complaints about the CHAMPS sports position and the reassignment of work in 2015, and his complaints about negative performance evaluations and receiving disciplinary letters in 2016 and 2017 all are untimely under the ADEA.  They accrued prior to 300 days from the date he filed his charge—or prior to June 27, 2018.  *See Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 210 (E.D.N.Y. 2014) (citing 29 U.S.C. § 626(d)(1)); *see also Duplan v. City of New York*,

888 F.3d 612, 622 n.7 (2d Cir. 2018).  Those acts may still "provide relevant background evidence to any timely claims."  *Vega*, 801 F.3d at 88 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002)); *see Davis-Garrett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("[E]ven with respect to a claim of discrete discriminatory or retaliatory acts, expiration of limitations period does not bar 'an employee from using the prior acts as background evidence in support of a timely claim.'") (quoting *Morgan*, 536 U.S. at 105)); *Harewood v. N.Y.C. Dep't of Ed.*, 2019 WL 3042486, at *4 (S.D.N.Y. May 8, 2019) ("[D]iscrete acts of discrimination that occurred outside the 300-day period [still] . . . provide relevant background evidence to any timely claims.").  However, they cannot constitute independent adverse actions upon which Plaintiff can ground his complaint.  *See Vega*, 802 F.3d at 79.

Furthermore, Plaintiff cannot use the continuing violation theory to revive his claims based on acts that occurred prior to the 300-day period before the NYSDHR/EEOC complaint.  In *Morgan*, the Supreme Court sharply limited application of that doctrine: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charged."  536 U.S. at 113; *see Hausdorf v. N.Y.C. Dep't of Educ.*, 2018 WL 1871945, at *5 (S.D.N.Y. Jan. 25, 2018) (holding that allegations that plaintiff was denied certain promotions and received unsatisfactory performance reviews and disciplinary letters were "discrete events that were separate from the incidents occurring during the limitations period" and thus were time barred).  Thus, "[f]ailure to promote, refusal to rehire, termination, job reassignments, and unsatisfactory performance reviews are discrete acts that constitute separate actionable employment practices."  *Hausdorf*, 2018 WL 1871945, at *5 (citing *Morgan*, 536 U.S. at 114); *see, e.g.*, *Roache v. Long Island R.R.*, 2020 WL 5594640, at *8 (E.D.N.Y. Sept 17, 2020); *Sirisena v. City Univ. of New York*, 2019 WL 1493220, at *4 (E.D.N.Y. Mar. 31 2019);

*Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 500 (S.D.N.Y. 2010); *see also Mohamed v. New York Univ.*, 2015 WL 3387218, at *15 (S.D.N.Y. May 21, 2015) (noting that since *Morgan,* the continuing violation doctrine has been limited to "claims amounting to assertions of hostile-work environment or similar claims that 'cannot be said to occur on any particular day' but rather are the product of events that take place 'over a series of days and perhaps years'") (quoting *Morgan*, 536 U.S. at 115).  Were it otherwise a school or an employer could not issue a negative evaluation or a disciplinary letter against a teacher or employee without fear that doing so—however merited the decision might be—would have the effect of reviving as an independent actionable claim every disciplinary letter issued in the past no matter how ancient.

Moreover, a plaintiff cannot assert that there has been a continuing violation "merely because the claimant continues to feel the effects of a time-barred discriminatory act."  *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).  The focus of the continuing violation analysis centers on the acts of the employers, not the effects felt by the employee.  *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003).  A plaintiff cannot circumvent the limitations period mandated by statute merely by alleging that she continued to feel the effects of certain discrete acts.  *See Gaffney v. Vill. of Mamaroneck Police Dep't*, 2016 WL 4547499, at *5 (S.D.N.Y. Aug. 31, 2016) ("A plaintiff may not simply characterize a discrete act of discrimination as ongoing in order to circumvent stringent time limits.").  Such a result would contravene the language of 26 U.S.C. § 626(d)(2), which refers to an "unlawful employment practice," and "there is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing."  *Morgan*, 536 U.S. at 111 (analyzing identical language in Title VII context).

2.      **Failure to State a Claim**

The specific adverse acts that Plaintiff alleges within the limitations period do not support a claim of age discrimination.

The only acts that can constitute a timely adverse employment action are those that occurred within 300 days of the filing of the NYSDHR/EEOC notice: a disciplinary notice Plaintiff received on September 13, 2018 related to an unspecified incident, Compl. ¶ 37; a disciplinary letter he received on November 13, 2018 related to an unspecified allegation, *id.* ¶ 38; Mercedes' threat to give Plaintiff an "Unsatisfactory" end of year rating based on this unspecified allegation at some time during the 2018-2019 school year, *id.* ¶ 39; a disciplinary letter he received on November 21, 2018 related to allegations of corporal punishment and the verbal abuse of a student, *id.*; Plaintiff's alleged constructive discharge effective November 26, 2018, *id.* ¶¶ 9-10; the alleged denial of post-constructive discharge teaching positions, *id.* ¶ 43; and the alleged denial of coaching and substitute positions in March 2019, *id.* ¶ 45.

Plaintiff ascribes these actions to age discrimination based on assertions that years earlier, during the 2013-2014 school year, several white and black older teachers were asked to leave the school or were pushed out by Mercedes and his administration while younger Hispanic teachers who were ineffectively rated were not pushed out of the school. *Id.* ¶ 14. He alleges that the pattern continued after the 2013-2014 school year—with a significant percentage of older staff being replaced in favor of younger and Hispanic teachers—and that in response to a March 2013 directive to reduce his staff, Mercedes targeted at least ten older, non-Hispanic employees. *Id.* ¶¶ 16-17. Mercedes ultimately succeeded in having most of these staff members, who had relatively high salaries, removed from their positions "through trumped up charges, forced retirement, or forced medical leave." *Id.* ¶ 17.

The only two allegations of discriminatory intent that Plaintiff makes specific to himself are: (1) he was one of the oldest staff members at MS 390 by virtue of being in his mid-50s, *id.* ¶ 12; and (2) Mercedes asked him three times during the 2015-2016 school year when he was planning to retire, *id.* ¶ 24.  Although he complains about the disciplinary letters and ratings he received—and in some cases says that they were unjustified or false—he does not allege that he was treated less favorably than others who were accused of similar conduct but were younger, that those outside of his protected group did not receive such letters or negative ratings, or that any age-related slurs were made against him.  *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (stating that a plaintiff can raise an inference of discrimination by showing that the employer "treated him less favorably than a similarly situated employee outside his protected group").  To the contrary, Plaintiff identifies four younger Hispanic teachers who were also ineffectively rated in the 2013-2014 school year and who—like him—did not leave the school. Compl. ¶ 14.

Whether deserved or not, however, the disciplinary notice and disciplinary letters cannot constitute adverse employment acts on the basis of age on their own.  "[C]ourts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results as such as decrease in pay or being placed on probation."  *Davis v. Goodwill Indus. of Greater New York & New Jersey, Inc.*, 2017 WL 1194686, at *7 (S.D.N.Y. March 30, 2017) (quoting *Honey v. Cty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002)).  "[A] negative performance review, without more, does not represent an adverse employment action."  *Mazzeo v. Mnuchin*, 2017 WL 2817083, at *6 (S.D.N.Y. June 29, 2017) (quoting *Chung v. City Univ. of New York*, 605 F. App'x 20, 22 (2d Cir. 2015)).  A negative evaluation or reprimand is not considered an adverse

employment action "absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss." *Browne v. City Univ. of New York*, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005) (citing cases); *see also Brown v. City of New York*, 2014 WL 5394962, at *8 (S.D.N.Y. Oct. 23, 2014) ("A negative evaluation or official reprimand may, in some circumstances, constitute adverse employment action, but only when it trigger[s] negative consequences to the conditions of employment") (internal citations omitted).  Plaintiff does not allege any negative consequences to the conditions of his employment stemming from the disciplinary notice and letters.

As to the threatened "Unsatisfactory" rating, Plaintiff does not allege he actually received a negative evaluation during the limitations period.  Courts have held that a mere threat of employment action that is not ultimately realized cannot constitute an adverse action.  Rather, "an adverse employment action must 'affect ultimate employment decisions such as promotion, wages, or termination.'" *Earl v. Wyeth Pharms., Inc.*, 603 F. Supp. 2d 556, 574 (S.D.N.Y. 2009) (citation omitted); *see Vaigasi v. Solow Mgmt. Corp.*, 2014 WL 1259616, at *10 (S.D.N.Y. Mar. 24, 2014) (holding threat of discipline was not an adverse action).  Thus, Plaintiff does not demonstrate an adverse action under the ADEA.

Finally, Plaintiff alleges that the disciplinary letters and notice led to a denial of teaching positions within the DOE and the denial of coaching and substitute positions elsewhere in March 2019 after his retirement from the DOE.  Compl. ¶¶ 43, 45.  While such events might constitute adverse employment actions, for the reasons stated above, Plaintiff has not adequately alleged that age was the "but-for" cause of these actions, *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d. 709, 719-20 (E.D.N.Y. 2015), or that the disciplinary letters and notice "support an inference of discrimination," *Kassner*, 496 F.3d at 238.  *See, e.g., Iazzetti v. Town of Tuxedo*,

2020 WL 4340872, at *8 (S.D.N.Y. July 27, 2020); *Langella v. Mahopac Cent. Sch. Dist.*, 2020 WL 2836760, at *8-9 (S.D.N.Y. May 31, 2020).

### B.    Hostile Work Environment and Constructive Discharge Claims

Plaintiff alleges that even if each of the discrete disciplinary notice and letter events do not constitute adverse employment acts on their own, those actions—in conjunction with the actions taken by Mercedes against Bernstein prior to 2018—created a hostile work environment and were so intolerable that they effected his constructive discharge.  Compl. ¶¶ 40, 46.  The Court considers both his hostile work environment and constructive discharge claims in turn.  It finds that Plaintiff has not stated a claim for either.

A hostile work environment under the ADEA, as under Title VII, is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment."  *Kassner*, 496 F.3d at 240 (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)) (internal quotations omitted); *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000).  A plaintiff must allege that the conduct "(1) was objectively severe or pervasive in that it created an environment that a reasonable person would find hostile or abusive; (2) created an environment that the plaintiff subjectively perceived as hostile or abusive; and (3) occurred because of the plaintiff's protected characteristic."  *Sherman v. Fivesky, LLC*, 2020 WL 2136227, at *5 (S.D.N.Y. May 5, 2020).  "[A] plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions."  *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (citation and quotation marks omitted).  Objective severity "can be determined only by looking at all of the circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

14

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Second Circuit has "cautioned against setting the bar too high" in the context of a motion to dismiss a claim of hostile workplace, and a plaintiff is therefore not required to recount an exhaustive list of specific acts that contributed to a hostile workplace. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). However, minor incidents do not give rise to a finding of hostile work environment.

Importantly, a hostile work environment "is [not] something that exists in some absolute way, like poisonous chemicals in the air, affecting everyone who comes in contact with it." *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 513 (S.D.N.Y. 2010) (Lynch, J. sitting by designation). Importantly, a plaintiff must demonstrate that *she* was the target of the hostile work environment and was subjected to hostility *because of* membership in a protected class. *See Kassner*, 496 F.3d at 241. A hostile work environment is "not one that is bad for all living things in a manner that happens to involve [characteristics of the protected class]; rather it is one that is *discriminatorily* hostile to an employee based on *his or her* [membership in the protected class]." *Krasner*, 680 F. Supp. 2d at 514.

Constructive discharge, meanwhile, "occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work environment that forces an employee to quit involuntarily." *Serrichio v. Wachovia Sec., LLC*, 658 F.3d 169, 185 (2d Cir. 2011). Working conditions are considered intolerable "if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* "The effect of a number of adverse conditions in the workplace is cumulative . . . [b]ecause a reasonable person encounters life's circumstances cumulatively and not individually."

*Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir. 1996).  However, the standard for finding a constructive discharge is a high one—more stringent than for finding a hostile workplace on its own and involves something more than hostile work environment allegations. *See, e.g.*, *Silva-Markus v. N.Y.C. Dep't of Educ.*, 2020 WL 5819555, at *7 (S.D.N.Y. Sept. 30, 2020) ("Constructive discharge is, in effect, 'an aggravated case of . . . hostile work environment.'") (citation omitted); *see also Kalp v. Kalmon Dolgin Affiliates of Long Island, Inc.*, 2013 WL 1232308, at *9 (E.D.N.Y. Mar. 27, 2013) ("[M]ere dissatisfaction with job assignments or criticism from a supervisor do not, in themselves, give rise to a constructive discharge claim.").

The Complaint fails to establish that MS 390 created a hostile workplace environment based on age and, by implication, that Plaintiff was constructively discharged.  Viewing the allegations cumulatively, Bernstein received a disciplinary notice and three disciplinary letters in the year before he retired.  Compl. ¶¶ 37-39.  He was also threatened with an "Unsatisfactory" rating and, in the three years before he left MS 390, had faced negative observations, had been "falsely docked" for a day of sick leave, and denied retroactive medical leave.  *Id.* ¶¶ 35-36. During none of that time period, however, does Plaintiff allege that there were any comments directed towards him regarding his age or that he was treated differently from others who were similarly situated but not in a protected age category.  The Second Circuit has consistently required that allegations of a hostile work environment go beyond harassment—with a single incident needing to be "extraordinarily severe" or a series of incidents "sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment."  *Cruz*, 202 F.3d at 570 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see, e.g.*,

*Silva-Markus*, 2020 WL 5819555, at \*9; *Taylor v. N.Y.C. Dep't of Educ.*, 2012 WL 3150388, at \*8 (E.D.N.Y. Aug. 2, 2012).

Plaintiff does allege that in the 2015-2016 school year, he was asked at least twice when he planned to retire and that, in that same year, he suffered a negative teacher evaluation and received false disciplinary letters.  Compl. ¶¶ 24-30.[3]  He further alleges that Mercedes took pains to ensure he would be ineligible for a per-session after-school CHAMPS sports position by changing its criteria to include school rating even though Plaintiff was the most qualified person for the position.  *Id.* ¶ 25.  He also describes that his physical education classes were removed from his schedule and given to a substitute teacher and that his line of duty disability time was not approved.  *Id.* ¶¶ 26-31.  But these allegations fail for three separate reasons.

First, a school system is entitled to ask a teacher when she plans to retire without automatically creating an inference that it discriminates on the basis of age.  With respect to every teacher, as with respect to virtually every employee, there may come a time when an employee considers retirement and there is no discriminatory intent reflected when a school planning for the future makes an inquiry as to when that time might come.  *See, e.g.*, *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997) ("The ADEA does not make all discussion of age taboo.  Nor does the fact that [plaintiff's] eligibility for early retirement came up in a conversation about [plaintiff's] qualifications for, and interest in, [a position].").  It is also not unreasonable for an employer to ask an employee, who has received negative evaluations, about her plans for retirement.  *See Molin v. Permafiber Corp.*, 2002 WL 31760215, at \*6 (S.D.N.Y.

---

[3] The Court considers these allegations only for the purposes of the hostile work environment claim.  *See Morgan*, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

Dec. 9, 2002) (no discrimination where employer asked plaintiff "about his retirement plans after looking into a possible replacement . . . given that [employer] was concerned about [plaintiff's] work performance"); *Lorans v. Crew*, 2000 WL 1196745, at *4 (S.D.N.Y. Aug. 23, 2000) ("A discussion of possible retirement is in fact consistent with the idea that there had been difficulties with plaintiff and that the [employer] was seeking a way to resolve the situation.").

Second, the type of actions that Plaintiff alleges constitute minor violations—negative evaluations, an incorrect docking for one day from sick leave, and denial of retroactive medical leave—on their own are neither "severe" nor "intolerable," and indeed, these actions may in fact be endemic to certain workplaces. He has not pled sufficient factual allegations that would support an inference that he was discriminated against based on his age or that others similarly situated to him would not have suffered in the same way for the reasons more fully elaborated above. As such, without a finding of adverse action on the basis of age, Plaintiff cannot state a claim for a hostile work environment or constructive discharge. *See George v. Pro. Disposables Int'l, Inc.*, 2016 WL 3648371, at *6 (S.D.N.Y. June 1, 2016) ("Plaintiff does not describe any comments, discriminatory or otherwise, about his age. There is no suggestion that plaintiff's age was ever discussed in connection with his termination; that he was ever criticized based on his age; that he was treated less favorably than younger employees; that he was ultimately replaced with a younger person; or that any of the events leading to his termination involved his age in any way.").

Third, and perhaps most important, Bernstein did not leave as a result of these events in 2015, and the events that transpired in the ensuing three years before he did leave were not linked—logically or based on age—to the events in 2015. His Complaint thus does not create the reasonable inference that Bernstein's alleged constructive discharge in November 2018 was

based on the cumulative effect of the events beginning in 2015 when he did not retire any time proximate to 2015 and the ensuing acts of which he complains were only sporadic thereafter. *See Pfizenmayer v. Hicksville Pub. Schs.*, 2017 WL 5468319, at *9-10 (E.D.N.Y. Jan. 24, 2017) (dismissing constructive discharge claim where acts occurred sporadically over a short period of time and three months elapsed between act and retirement); *see also Culmone-Simeti v. N.Y.C. Dep't of Educ.*, 2019 WL 2409736, at *3-4 (S.D.N.Y. June 7, 2019) (dismissing constructive discharge where plaintiff chose not to seek redress through the disciplinary process or otherwise challenge the alleged unwarranted performance ratings).  Moreover, criticism—here, in the form of disciplinary letters—is not enough to support a claim for constructive discharge.  *See, e.g.*, *Miller v. Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir. 2010).  Nor is the possibility of further discipline as a result of allegations of corporal punishment sufficient.  *See Reiss v. Hernandez*, 2019 WL 4688639, at *8-9 (S.D.N.Y. Sep. 26, 2019).

For all of those reasons, Plaintiff's allegations fall well below the level at which a reasonable person would feel compelled to resign.  Plaintiff's constructive discharge claim under the ADEA must therefore fail.

### C.    Retaliation Claim

Plaintiff also brings a retaliation claim under the ADEA.  Compl. ¶¶ 49-50.  Plaintiff notes that he filed his NYSDHR/EEOC complaint on or about April 23, 2019 and that in March 2019, after retiring from DOE, he was denied subsequent coaching and substitution positions due to false and pending charges against him.  *Id.* ¶ 45; *see also* Dkt. No. 11-3.  He alleges that Mercedes substantiated these claims after he retired, fully knowing that they were untrue. Compl. ¶ 45.  Defendant argues that Bernstein has failed to exhaust his administrative remedies.

To adequately allege a retaliation claim, a plaintiff must plausibly allege that a defendant discriminated—or took an adverse employment action—against him because he has opposed an

unlawful employment practice.  *Vega*, 801 F.3d at 90.  Stated otherwise, a plaintiff must allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Littlejohn*, 795 F.3d at 315-16.  Protected activity includes "the filing of formal charges of discrimination . . . as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges."  *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

"No action based on a claim of age discrimination [or retaliation] may be brought in federal court unless the claim was properly raised with the EEOC, i.e., within the permissible time limit for filing the claim with the EEOC."  *Miller Int'l Tel. and Tel. Corp.*, 55 F.2d 20, 23 (1985).  The "purpose" of this notice provision is "to encourage settlement of discrimination disputes through conciliation and voluntary compliance," which "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Id.* at 26.  The Second Circuit "has recognized three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action": (1) "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"; (2) where the plaintiff alleges "retaliation by an employer against an employee for filing an EEOC charge"; and (3) "where plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC

charge." *Butts v. City of New York Dep't of Hous.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993).
None of these situations applies here.

The failure to include a charge of retaliation based on the filing of an EEOC charge is
excused when the act of retaliation follows the filing of the EEOC charge.  The logic for relaxing
exhaustion requirement in that circumstance is the "close connection of the retaliatory act to both
the initial discriminatory conduct and to the filing of the charge itself." *Id.* at 1402.  Where the
retaliation follows the filing of the EEOC complaint, "[t]he EEOC already will have had the
opportunity to investigate and mediate the claims arising from the underlying discriminatory acts
alleged" and "the principle benefits of EEOC mediation of claims and conciliation . . . are much
less likely to result from a second investigation." *Id.*  Indeed, the Second Circuit has noted that
"requiring a plaintiff to file a second EEOC charge under these circumstances could have the
perverse result of promoting employer retaliation in order to impose further costs on plaintiffs
and delay the filing of civil actions relating to the underlying acts of discrimination." *Id.*

That same logic does not apply when the protected activity—whether it be a plaintiff's
statement that she will file an EEOC charge or some other protected activity—precedes the
EEOC complaint.  In that instance, the inclusion of a complaint of retaliation in addition to the
complaint of discrimination will not result in a "second investigation" nor will it "delay the filing
of civil actions relating to the underlying acts of discrimination" and thus cannot have "the
perverse result of promoting employer retaliation." *Id.*  Indeed, by including a claim of
retaliation, the complainant permits the EEOC to do its job of investigating and mediating
claims.  For that reason, where the alleged retaliatory act precedes the filing of the first EEOC
complaint, the courts inquire as to whether the retaliation claim is reasonably related to the
discrimination claims formally included in the charge such that the complaint "includes enough

factual allegations to alert the EEOC to the possibility that the employee was subjected to retaliation." *Jenkins v. N.Y.C. Trans. Auth.*, 646 F. Supp. 2d 464, 472 (S.D.N.Y. 2009) (citing cases); *see O'Hara v. Mem'l Sloan-Kettering Cancer Ctr.*, 27 F. App'x 69, 70-71 (2d Cir. 2001) ("The scope of an EEOC investigation cannot reasonably be expected to encompass retaliation when [plaintiff] failed to put the agency on notice that she had engaged in the type of protected activity that is the predicate to a retaliation claim.").

Plaintiff's NYSDHR/EEOC complaint does not contain such factual allegations to alert the EEOC to his retaliation claim. The NYSDHR/EEOC complaint does not check the box for retaliation. Dkt. No. 11-3. At most, it attaches an addendum that states: "In March 2019, I have been denied coaching and sub positions due to false charges against me that Principal Mercedes sustained, fully knowing that they were not true." Dkt. No. 11-3 ¶ 23.[4] But this allegation alone contains no reference to protected activity by Plaintiff and is insufficient to put the EEOC on notice that retaliation "would fall within the scope of the EEOC investigation." *Butts*, 990 F.2d at 1402-03.[5] Where courts have "found such pre-EEOC charge retaliation claims not to be reasonably related to claims explicitly made in the charge, these cases have generally involved charges which were devoid of any reference to a retaliatory motive or any allegation that the plaintiff had engaged in a protected activity," such as here. *Jenkins*, 646 F. Supp. 2d at 472 (citing cases); *see Cordoba v. Beau Deitl & Assocs.*, 2003 WL 22927874, at *10 (S.D.N.Y. Dec. 2, 2003) (holding that failure to allege protected activity in EEOC complaint and reliance on sole

---

[4] Although the NYSDHR/EEOC complaint is notarized February 4, 2019, it bears the date stamp April 23, 2019 and refers to events that occurred before its filing, in March 2019. Dkt. No. 11-3.
[5] Plaintiff asserts, for the first time in his opposition brief, that the filing of the NYSDHR/EEOC complaint was protected activity. Dkt. No. 22 at 13. But at oral argument, Plaintiff conceded that if the NYSDHR/EEOC complaint was filed after the events serving as the basis for the retaliation claim—as the date stamp of the complaint so indicates—then there would not be a retaliation claim. Hr'g Tr. at 10:16-11:12 (Nov. 4, 2020).

allegation that defendant "committed unlawful discriminatory practices and retaliation against me based upon my age and national origin" was fatal to unexhausted retaliation claim); *Bailey v. Colgate-Palmolive Co.*, 2003 WL 21108325, at *13 (S.D.N.Y. May 14, 2003) (holding that retaliation claim was not reasonably related where EEOC complaint did not refer to any retaliatory conduct or protected activity).  Similarly here, "nothing in the Charge provided the EEOC adequate notice to investigate possible retaliation." *Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 650 (2d Cir. 2011).  Plaintiff's retaliation claim thus is barred by his failure to raise it with the EEOC.

For similar reasons, even if Plaintiff had raised the issue of retaliation with the EEOC, the allegations in his Complaint do not plausibly allege retaliation.  The alleged retaliatory acts preceded the protected activity.  Thus, as Plaintiff's counsel admitted at argument in conceding the weakness of the claim, as a logical matter, an adverse action cannot have been prompted by protected activity when the protected activity had not occurred (and was not even threatened) prior to the adverse employment action.

## II.  NYSHRL and NYCHRL Claims

The Complaint also asserts NYSHRL and NYCHRL age and race discrimination claims against both the DOE and Mercedes.

Plaintiff does not dispute that no notice of claim was filed against the DOE as required by New York Education Law § 3813(1) for an action to proceed against a board of education.  *See* N.Y. Educ. L. § 3813(1) (notice of claim required for claims "against any school district, board of education, board of cooperative educational services, school [or] . . . any officer of a school district, board of education, board of cooperative educational services, or school"); *see Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 411 (S.D.N.Y. 2013) ("[T]he failure to serve the proper public body with a notice of claim is a fatal defect mandating

dismissal of th[e] action.").  He therefore is deemed to have abandoned those claims, and his NYSHRL and NYCHRL claims against the DOE are dismissed.  *See, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014).

The notice of claim statute, however, does not apply to Mercedes, who, as a DOE principal, is not considered an "officer of a school district" under the statute.  N.Y. Educ. L. § 2(13) (defining "school officer"); *see Lawson v. N.Y.C. Bd. of Educ.*, 2011 WL 5346091, at *20 (S.D.N.Y. Aug. 30, 2011).  The statute of limitations for the NYSHRL and NYCHRL age and race discrimination claims against Mercedes are three years, though "numerous courts in this Circuit have determined that the filing of an EEOC charge generally tolls the statute of limitations on related NYSHRL claims" brought outside New York Education Law § 3813(1). *Langella*, 2020 WL 2836760, at *15 (citing cases); *see also Rettino v. N.Y.C. Dep't of Educ.*, 2020 WL 4735299, at *4 (S.D.N.Y. Aug. 14, 2020).

The Court declines to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c).  Although the Court has analyzed the allegations according to the ADEA standards of liability and statute of limitations, the Court has not analyzed the NYSHRL and NYCHRL discrimination claims that contain additional allegations of racial discrimination and are subject to a longer statute of limitations.  The state courts are better suited to analyze those claims in the first instance.  *See Milord-Francois v. N.Y.S State Off. of Medicaid Inspector Gen.*, 2020 WL 5659438, at *24 (S.D.N.Y. Sept. 23, 2020).[6]

## CONCLUSION

The motions to dismiss are GRANTED without prejudice.

---

[6] Should the federal claims survive a renewed motion to dismiss, the Court may choose to exercise such supplemental jurisdiction.

At oral argument, Plaintiff requested leave to replead, noting that there are additional facts obtained through discovery that could bolster his claims.  *See* Hr'g Tr. at 14:14-20, 15:11-16:1 (Nov. 4, 2020).  The dismissal is without prejudice and Plaintiff is given leave to file an amended complaint within 30 days of this Opinion and Order.

The Clerk of Court is respectfully directed to close Dkt. Nos. 11, 19.


SO ORDERED.

Dated: November 9, 2020
      New York, New York                                  LEWIS J. LIMAN
                                         United States District Judge