UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

:

STEVEN BERNSTEIN,                                        :

:

                  Plaintiff,           :

:

                                              :           19-cv-11816 (LJL)

      -v-                                                 :

:           <u>OPINION AND ORDER</u>

NEW YORK CITY DEPARTMENT OF                   :

EDUCATION, et al.,                                      :

:

                 Defendants.          :

                                         X

---------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

      Defendants New York City Department of Education ("DOE") and Robert Mercedes

("Mercedes") as principal of Middle School 390 (collectively, "Defendants") move to dismiss

the amended complaint filed against them.

      Familiarity with respect to this Court's opinion on Defendants' motion to dismiss

Plaintiff's prior complaint is assumed.  Dkt. No. 37.  Plaintiff Steven Bernstein ("Plaintiff" or

"Bernstein") was a tenured physical education teacher who was employed by the DOE from

1996 until November 26, 2018.  Bernstein, who is Caucasian, was 55 years old at the time of his

alleged constructive discharge.  Dkt. No. 40 ¶¶ 10-11, 52.

      On December 26, 2019, Bernstein filed his original complaint against Defendants after

filing a dual complaint with the New York State Division of Human Rights ("NYSDHR") and

the Equal Employment Opportunity Commission ("EEOC") on April 23, 2019.  The complaint

alleged claims for age discrimination, retaliation, and constructive discharge in violation of the

Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621 *et seq.*, and against Doe

and Mercedes for age and race discrimination in violation of the New York State Human Rights

Law ("NYSHRL"), N.Y. Exec. Law 290 *et seq.*, and the New York City Human Rights Law

("NYCHRL"), N.Y. Admin Code. 8-101 *et seq.*

On November 9, 2020, this Court issued an Opinion and Order dismissing Plaintiff's

complaint without prejudice.  The Court concluded that Plaintiff failed to state a claim for age

discrimination, hostile workplace, and constructive discharge.  It declined to exercise

supplemental jurisdiction over Plaintiff's age and race discrimination claims under the NYSHRL

and the NYCHRL.  It held that the retaliation claim was barred by Plaintiff's failure to raise it

with the EEOC and failed to state a claim in any event.  It further held that Plaintiff's complaints

about Defendants' conduct from 2011 to 2013, the reassignment of work in 2015, and the

negative performance evaluations and disciplinary letters he received in 2016 and 2017 were all

untimely under the ADEA and that the acts which he alleged within the limitations period did not

support a claim for age discrimination.  Most of Defendants' acts about which Plaintiff

complained did not constitute adverse employment actions.  Plaintiff did not allege facts

supporting a hostile work environment based on age, nor did his complaint create a plausible

inference that his constructive discharge was based on the acts that he claimed gave rise to a

hostile work environment.  The Court gave Plaintiff leave to file an amended complaint.  On

December 9, 2020, Plaintiff filed an amended complaint.  The amended complaint asserts claims

for violations of the ADEA based on discrimination and a hostile work environment (First Claim

for Relief).  It also asserts claims under the NYSHRL and the NYCHRL.  Dkt. No. 40.  This

Opinion addresses Defendants' motion to dismiss the amended complaint.

## BACKGROUND

The Court accepts the well-pleaded allegations of the amended complaint as true.

Plaintiff worked as a tenured physical education teacher at Middle School 390 ("MS

390") in Bronx, New York beginning in September 2009.  Dkt. No. 40 ¶¶ 1, 5, 8-9.  In December

2011, he was reassigned to be a health teacher at MS 390 and continued in that position until November 26, 2018. *Id.* ¶ 10. At the time of the filing of the original complaint, Plaintiff was 57 years old, having been born on November 14, 1963. *Id.* ¶ 11. Defendant Mercedes was and is the Principal of MS 390. *Id.* ¶ 7. He is of Dominican national origin. *Id.*

Plaintiff alleges that he was "target[ed]" for discrimination on the basis of age by Mercedes beginning "during the summer of 2011." *Id.* ¶ 18. Plaintiff complains about a number of actions taken by Mercedes from that date until the fall of 2018. Most of the actions taken by DOE and Mercedes occurred prior to 2018.

During the summer of 2011, Mercedes directed that "several personal items belonging" to Plaintiff be removed from the gym office including a special lumbar support chair which Mercedes discarded, without allowing or requesting that Plaintiff remove the items himself. *Id.* On or around October 2011, Mercedes attempted to have Plaintiff removed from his volunteer softball coaching job by substantiating a false complaint against him to the DOE Office of Special Investigation. *Id.* ¶ 19. In December 2011, Mercedes changed Plaintiff's position from physical education teacher to health teacher mid-year. *Id.* ¶ 21. The following year, in September 2012, Mercedes withheld Plaintiff's sabbatical application so that it never reached the Superintendent for approval and signature. *Id.* ¶ 22. Beginning in the fall of 2013, Mercedes "continually harassed Mr. Bernstein regarding his wearing physical education-teacher appropriate shorts at work, although there was no dress code in the school, by giving him several disciplinary letters to file about the issue." *Id.* ¶ 23.

In the fall of 2015, Mercedes "tailored a per session after-school CHAMPS sports position so that [he] was not eligible for the position, by including his school rating as a criterion for the position," causing Plaintiff the loss of pensionable per session compensation, *id.* ¶ 25,

and, in November 2015, Mercedes removed all of his physical education classes from his schedule and gave them to a substitute teacher, assigning Plaintiff a substitute teacher schedule including math classes outside his license area, *id.* ¶ 26.  After Plaintiff returned from a leave from work he had taken until March 1, 2016 due to a herniated disc he suffered in math class, Mercedes continued to keep Plaintiff away from physical education classes and assigned him only math classes and a curriculum called Adaptive PE for classes for students with mental and physical disabilities, although there were no such students.  *Id.* ¶ 28.  In the 2015-2016 school year, Mercedes caused Plaintiff to be rated Ineffective overall on his evaluations, subjecting him to a Teacher Improvement Plan for the following school year, and gave Plaintiff "false" disciplinary letters on March 1, 2016, and June 27, 2016.  *Id.* ¶¶ 29-30.  He also interfered with and did not approve Plaintiff's Line of Duty injury (LODI) disability time between November 2015 and March 2016.  *Id.* ¶ 31.

During the 2016-2017 school year, Mercedes added negative observations to Plaintiff's employment file that Plaintiff characterizes as false and having been given "without conducting any evaluations to support such observations."  *Id.* ¶ 32.  Plaintiff received "false" disciplinary letters dated February 12, 2017 and March 17, 2017.  *Id.* ¶ 34.  Mercedes also refused to agree to Plaintiff's request that his observations be videotaped.  *Id.* ¶ 33.

Plaintiff also complains about a number of actions taken in 2018, before his retirement in late November 2018.  In June 2018, during the 2017-2018 school year, Mercedes docked Plaintiff for a day from his sick bank based on the allegedly false claim that he was not in attendance at school and refused to sign off on a retroactive medical leave for him.  *Id.* ¶¶ 35-36.  He also refused three times to sign a medical form that would make Plaintiff eligible for retroactive payments, which Plaintiff claims was part of the 2014 UFT-DOE contract.  *Id.* ¶ 37.

Mercedes gave Plaintiff a disciplinary notice dated September 13, 2018. *Id.* ¶ 38. In November 2018, Mercedes gave Plaintiff two disciplinary letters. The first allegedly falsely accused and substantiated an allegation of corporal punishment and verbal abuse against Plaintiff by letter dated November 21, 2018. The second disciplinary letter dated November 13, 2018, concerned an unspecified allegation from the prior school year of 2017-2018. *Id.* ¶ 39. Plaintiff also alleges that Mercedes threatened him with an Unsatisfactory end of year rating for the 2018-2019 school year based on the allegation from the 2017-2018 school year. *Id.* ¶ 41.

Plaintiff retired in the middle of the 2018-2019 school year "given the ongoing hostile work environment he had been subjected to." *Id.* "Given the litany of disciplinary letters he was receiving since 2016 until the fall of 2018, [he] was in continual fear that his job was in jeopardy due to continued harassment and threats from Principal Mercedes." *Id.* ¶ 42. As a result, he "felt no alternative" and "le[ft] his position and was constructively discharged effective November 26, 2018." *Id.* ¶ 43. As a result, he did not receive the Unsatisfactory rating that Mercedes had threatened for the 2018-19 school year. *Id.* ¶ 41. However, he alleges that the disciplinary letters he received in 2018 "explicitly prevented him from working post-retirement in the NYCDOE, including substitute teaching and coaching softball." *Id.* ¶ 39. He also alleges that in February 2019, after his retirement, he was hired for a softball coaching position at Theodore Roosevelt High School, but he was told by the athletic director that he could not be placed on payroll given the adverse problem codes that Mercedes had placed on his record due to the false corporal punishment allegation substantiated only by Mercedes himself in November 2018. *Id.* ¶ 40. He further alleges he was not able to secure another position elsewhere within the NYCDOE because he was told by multiple principals at other schools that he made too much money for them to hire him, *id.* ¶ 45, and that in March 2019, after he left MS 390, he was

denied coaching and substitute positions due to false and pending charges again him that

Mercedes substantiated after he retired, fully aware that the allegations were untrue, *id.* ¶ 47.

Plaintiff alleges that Mercedes's acts were based on Plaintiff's age, which was 55 as of

the date of his retirement.  In particular, he alleges that "[s]ince the 2013-2014 school year, the

MS 390 administration, led by Principal Mercedes, has been targeting older teachers and other

staff in favor of younger staff members at the school." *Id.* ¶ 13.  In support of that allegation,

Plaintiff alleges that a general education teacher named Linda White, who was then 64 years old,

received consistently negative ratings during the 2013-2014 school year, while her younger

Hispanic counterpart Mr. Alvarez received positive ratings, leading White to leave the school.

*Id.* ¶ 14.  He also lists four younger Hispanic teachers who he alleges were ineffectively rated but

were not pushed out of the school.  *Id.*  Further, he alleges that in March 2013, Mercedes

received a notification that he had to reduce his staff because of budget cuts and that he

specifically targeted non-Hispanic employees to leave the school, naming ten employees

(including Ms. White).  *Id.* ¶ 16.  He alleges that since the 2013-2014 school year, Mercedes has

replaced a significant percentage of the older staff in favor of younger and Hispanic teachers.  *Id.*

¶ 15.

Plaintiff alleges that with respect to him personally, in the 2015-2016 school year,

Mercedes asked him at least three times in different contexts when he was going to retire from

the school and the NYCDOE when calling him into several meetings in the principal's office.

*Id.* ¶ 24.  He also alleges that for the 15 years prior to the fall of 2011, when Mercedes began the

campaign to harass him and to target him, he had not received any disciplinary letters and had

only received effective or satisfactory ratings.  *Id.* ¶ 20.  The amended complaint adds the

allegations that (1) after Plaintiff left MS 390, he was replaced by a specifically-identified

younger Hispanic teacher who, "[u]pon information and belief," had not been subject to a similar hostile work environment, *id.* ¶ 49, and, while Plaintiff was at MS 390, he "was treated less well than a similarly situated junior colleague, Simeon Reid, the only other gym teacher at the school," *id.* ¶ 50.  Reid "(1) [was] given advanced notice of observations by school administrators, (2) never had his schedule changed by school administrators, (3) [was] not taken away from gym assignments and given out of license assignments like Mr. Bernstein, (4) obtained higher performance ratings than Mr. Bernstein despite engaging in similar performance tasks, and (5) did not get disciplinary letters with nearly the severity and frequency that Mr. Bernstein did." *Id.* ¶ 50.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."

*Twombly*, 550 U.S. at 556; *see also Matrixx Infinitives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

In ruling on Defendants' motions to dismiss, the Court may consider not only the Complaint but also Plaintiff's "relevant filings with the EEOC and other documents related to plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either incorporate[d] by reference or are integral to and solely relie[d] upon by the complaint." *Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (internal citation and quotation marks omitted).

## DISCUSSION

## I.     Plaintiff's ADEA Claims Are Untimely or Fail To State A Claim for Relief

### A.     Legal Standards

The ADEA provides that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age."  29 U.S.C. § 623(a)(1).  This protection extends to employees who are over the age of 40.  *Id.* § 631(a).  To establish a prima facie case of age discrimination, a plaintiff must show that (1) he is within the protected age group, (2) he was qualified for the position, (3) he experienced adverse employment action, and (4) such action occurred under circumstances giving rise to an inference of discrimination.[1]  *See Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).  Moreover, "a plaintiff alleging age discrimination

---

[1] Plaintiff was over 40 years old at all relevant times and thus was a member of a protected age group, 29 U.S.C. § 621(a), and there is no dispute that the complaint adequately pleads he was qualified for his position.

under the [ADEA] must allege that 'age was the "but-for" cause of the employer's adverse action.'" *Vega*, 801 F.3d at 86 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)).  Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *see also Kassner*, 496 F.3d at 238.

"Plaintiffs asserting claims under Title VII, the ADEA, or the ADA must first file a complaint with the [EEOC] or an equivalent state agency within 300 days of the allegedly discriminatory action." *Gindi v. N.Y.C Dep't. of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019); *see also* 29 U.S.C. § 626(d)(1).

## B.    Most of Plaintiff's Claims Are Untimely

Most of Plaintiff's claims are untimely.  This Court previously held that in connection with the original complaint Plaintiff could not assert a federal age discrimination claim based on acts that occurred more than 300 days before his filing of the NYSDHR/EEOC notice on April 23, 2019.  Dkt. No. 37 at 11.  Plaintiff does not challenge that holding here or allege any new facts that would cause the Court to come to a different conclusion.  To the extent that Plaintiff's complaint seeks relief based on Mercedes's acts from 2012 to 2017, including the acts with respect to the CHAMPS position and reassignment of work in 2015, and the negative

9

performance evaluations and disciplinary letters he received in 2015 and 2017, any claims with respect to that conduct would have accrued more than 300 days from the date he filed his charge—or prior to June 27, 2018 and thus are time barred.  *See Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 210 (E.D.N.Y. 2014) (citing 29 U.S.C. § 626(d)(1)); *see also Duplan v. City of New York*, 888 F.3d 612, 622 n.7 (2d Cir. 2018).  Those acts may still "provide relevant background evidence to any timely claims."  *Vega*, 801 F.3d at 88 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002)); *see also Davis-Garrett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("[E]ven with respect to a claim of discrete discriminatory or retaliatory acts, expiration of limitations period does not bar 'an employee from using the prior acts as background evidence in support of a timely claim.'" (quoting *Morgan*, 536 U.S. at 105)); *Harewood v. N.Y.C. Dep't of Ed.*, 2019 WL 3042486, at *4 (S.D.N.Y. May 8, 2019) ("[D]iscrete acts of discrimination that occurred outside the 300-day period [still] . . . provide relevant background evidence to any timely claims.").  However, they cannot constitute independent adverse actions upon which Plaintiff can ground his complaint.  *See Vega*, 801 F.3d at 79.

## C.    The Remainder of Plaintiff's Allegations Fail to State a Claim for Relief Under the ADEA

### 1.    Age Discrimination Based on Adverse Employment Action

Plaintiff does allege a number of acts that occurred after June 27, 2018 and thus are not time barred: (1) the June 2018 decision to dock Plaintiff for a day from his sick bank based on the allegedly false claim that he was not in attendance at school, refusal to sign off on a retroactive medical leave for him, and refusal three times to sign a medical form that would have made Plaintiff eligible for retroactive payments which Plaintiff claims was part of the 2014 UFT-DOE contract, Dkt. No. 40 ¶¶ 35-37; (2) a disciplinary notice dated September 13, 2018; (3) the November 2018 disciplinary letters, accusing Plaintiff of corporal punishment and verbal

abuse, *id.* ¶ 39; and (4) the threat of an "Unsatisfactory" end of year rating for the 2018-2019 school year based on the allegation from the 2017-2018 school year, *id.* ¶ 41.  He also alleges the combination of events—including those that preceded June 2018—gave rise to a hostile work environment and also led to his constructive discharge on the basis of age.  He further alleges he was denied post-retirement teaching and coaching positions in February and March 2019.  *See id.* ¶¶ 40, 47.

Plaintiff has pleaded sufficient facts to support a plausible inference that the November 2018 disciplinary letters are an adverse employment action.  "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boonmalert*, 721 F. App'x at 32 (quoting *Kassner*, 496 F.3d at 238).  "Examples of adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Bernstein v. New York City Department of Education*, 2020 WL 6564809, at *4 (S.D.N.Y. Nov. 9, 2020) (quoting *Galabya*, 202 F.3d at 640).

Although as a general matter, a negative evaluation or a disciplinary letter does not constitute an adverse employment action, *see Bernstein*, 2020 WL 6564809, at *6 (citing cases), it can rise to such an action when it is accompanied by "an adverse result such as demotion, diminution of wages, or other tangible loss," *id.* (quoting *Browne v. City Univ. of New York*, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005)).  Plaintiff alleges that the November 2018 disciplinary letters prevented him from working post-retirement in the NYCDOE, including substitute

teaching and coaching softball and that as a result of the letters and the adverse problem codes placed on his record, he could not be placed on payroll at Theodore Roosevelt High School.  Dkt. No. 40 ¶¶ 39-40.  Those allegations are sufficient to make the disciplinary letters adverse employment actions.  *Reiss v. Hernandez*, 2019 WL 4688639, at *6-7 (S.D.N.Y. Sept. 26, 2019) (holding that an ineffective rating which led to denial of per session work constitutes adverse employment action); *Miller v. Dep't of Educ. of City of N.Y.*, 2018 WL 1468703, at *3 (S.D.N.Y. Mar. 23, 2018) (holding that evaluation "preclud[ing]" teacher from per session work constituted adverse employment action); *Dimitracopoulos*, 26 F.Supp.3d at 2017 (holding that negative evaluations resulting in "subsequent deprivation of [teacher's] per session employment" could plausibly constitute adverse conduct).

The Court reaches a different result with respect to the September 2018 disciplinary notice and the alleged threat in 2018 that Plaintiff would receive an Unsatisfactory rating for that school year.  Plaintiff does not allege that the disciplinary notice resulted in any adverse employment results; it does not itself constitute an adverse employment action.  As to the rating, Plaintiff did not receive such a rating, and it therefore did not have any impact on the terms and conditions of his employment.  Although the threat of such a letter may be relevant evidence and a relevant allegation with respect to Plaintiff's claim of hostile work environment and constructive discharge, discussed below, it cannot itself give rise to a claim of age discrimination.  "[A] mere threat of employment action that is not ultimately realized cannot constitute an adverse action."  *Bernstein*, 2020 WL 6564809 at *6 (citing cases); *see also Vaigasi v. Solow Mgmt. Corp.*, 2014 WL 1259616, at *10 (S.D.N.Y. Mar. 24, 2014) (holding threat of discipline was not an adverse action).

With respect to Plaintiff's allegations that in June 2018 Defendant Mercedes erroneously

docked Plaintiff a day of sick leave, refused to approve a retroactive medical leave, and refused

to sign a form making Plaintiff eligible for $28,000 in contractual retroactive payments, the

Court concludes that Plaintiff has pleaded sufficient facts to support a plausible inference that

these decisions constitute an adverse employment action.  These decisions resulted in a "tangible

loss" to Plaintiff, namely a loss of paid time off and retroactive payments.  *Bernstein*, 2020 WL

6564809, at *6.

        Plaintiff's allegations of age discrimination fail for the alternative reason that they do not

establish a plausible inference that Defendants' conduct was based on a discriminatory motive or

on Plaintiff's age as opposed to on Defendants' view—even if mistaken—of Plaintiff's conduct

and whether that conduct should subject him to discipline.  "Circumstances that may 'give rise to

an inference of discriminatory motive' include 'actions or remarks made by decisionmakers that

could be viewed as reflecting a discriminatory animus,' as well as 'preferential treatment given

to employees outside the protected class.'"  *Murtha v. New York State Gaming Comm'n*, 2019

WL 4450687, at *6 (S.D.N.Y. Sept. 17, 2019) (quoting *Chertkova v. Conn. Gen Life Ins. Co.*, 92

F.3d 81, 91 (2d Cir. 1996)); *see also Reiss*, 2019 WL 4688639, at *7 (same).

        As Plaintiff argues, his allegations that Mercedes's actions were based on discrimination

fall into two categories—direct and indirect.  Dkt. No. 50 at 12.  He claims, first, that there is

direct evidence of age discrimination because Mercedes asked him at least three times in the

2015-2016 school year when he was going to retire, *id.* (citing Dkt. No. 40 ¶ 24), because he was

replaced by a younger Hispanic teacher, *id.* (citing Dkt. No. 40 ¶ 49), and because he was treated

differently from a junior colleague, *id.* (citing Dkt. No. 40 ¶ 50).  As this Court previously has

held, however, and as is well established in the law, "a school system is entitled to ask a teacher

when she plans to retire without automatically creating an inference that it discriminates on the

basis of age." *Bernstein*, 2020 WL 6564809, at *8.  "With respect to every teacher, as with respect to virtually every employee, there may come a time when an employee considers retirement and there is no discriminatory intent reflected when a school planning for the future makes an inquiry as to when that time might come." *Id.*  The inference that Plaintiff would have the Court draw is even more attenuated given the approximately three-year gap between Mercedes's questions in November 2015 and the disciplinary letters in November 2018.

Plaintiff's allegations of disparate treatment do not establish a minimal inference of discrimination or nudge his claim across the line from the "conceivable" to the "plausible." *Vega*, 801 F.3d at 84 (citing *Iqbal*, 556 U.S. at 678); *see also Littlejohn*, 795 F.3d at 311 (holding that a plaintiff need only allege facts establishing a minimal inference of discrimination).  A plaintiff claiming disparate treatment must allege that he was 'similarly situated in all material respects' to the individuals with whom he seeks to compare himself." *Murtha*, 2019 WL 4450687, at * 6 (quoting *Graham v. Long Island R. R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *Johnson v. New York University*, 2018 WL 4908108, at *4 (S.D.N.Y. Oct. 10, 2018) (same); *Agnant v. CSC Holdings, LLC*, 2020 WL 2615907, at *6 (E.D.N.Y. May 20, 2020) (same).  In particular, "[t]o assess whether another employee is similarly situated in all material respects, courts must consider '(1) whether the plaintiff and [comparators] were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness.'" *Solomon v. Fordham Univ.*, 2020 WL 7711697, at *9 (S.D.N.Y. Dec. 29, 2020) (quoting *Graham*, 230 F.3d at 40); *Agnant* at *6 (same); *Walker v. New York City Dep't of Corrections*, 2008 WL 4974425, at *14 (S.D.N.Y. Nov. 19, 2008) (same).

Plaintiff does not allege any facts from which the Court can draw the inference that he was similarly situated to Reid other than that the two were the only gym teachers at the school.

Dkt. No. 40 ¶ 50.  He does not allege that Reid engaged in conduct similar or of comparable seriousness to that which gave rise to the disciplinary letters against Plaintiff.  He also does not allege that the two had similar work experience or education, or had similar performance ratings or evaluations, or similar skills.  *See Solomon*, 2020 WL 7711697, at *9 (noting that courts also consider whether plaintiff and comparator had similar education or work experience).  Absent any such allegations, the Court is left with no inference to draw other than that Reid did not receive disciplinary letters with similar frequency and of similar severity because he did not engage in conduct of similar severity and with similar frequency.  *See Murtha*, 2019 WL 4450687, at *6 ("Without any specificity as to the qualifications considered for each position and without any reference to specific statements or individual circumstances that suggest discriminatory treatment, [a plaintiff's] allegations do not support a finding that defendants acted with a discriminatory purpose." (quoting *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015))); *see also Johnson v. Andy Frain Servs., Inc.*, 683 F. App'x, 68, 70-71 (2d Cir. 2016) (finding ADEA discrimination claims properly dismissed where plaintiff claimed she was fired while co-worker outside of her protected class was not because plaintiff failed to allege that her co-worker had similar job descriptions or responsibilities); *Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 505 (S.D.N.Y. 2012) (holding that ADEA plaintiff failed to establish an inference of discrimination by identifying two older employees that were laid off because plaintiff did not provide any evidence as to whether, inter alia, the older employees were terminated by the same individual that terminated the plaintiff or were replaced by younger workers); *Moultrie v. NYS Dep't of Corrections and Community Supervision*, 2015 WL 2151827, at *4 (S.D.N.Y. May 7, 2015) (dismissing claim because "the fact that [proposed comparators] were treated more favorably raises no inference that gender played a role in Plaintiff's

termination" without any other facts).

An inference of age discrimination also cannot be drawn from the fact that after Plaintiff retired he was replaced by a "younger" teacher.  Dkt. No. 40 ¶ 49.  "[T]he mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive."  *Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 33 (2d Cir. 2016).  There are no allegations that the persons who hired the "younger" teacher are the same as those who were engaged in the employment-related conduct that Plaintiff claims was adverse or that they were even aware of it.  Nor is there an allegation that the new teacher—Michael Cortsidis—was much younger than Plaintiff.  Just as with questions regarding retirement, a school system is not required to replace a teacher who decides to retire with a teacher of equal or greater age on pain—that if it does not do so—it will be subject to an age discrimination lawsuit.  Some allegation must be made to link the conduct giving rise to the claim of an adverse employment action to that of the defendant in hiring the replacement employee.  *See Marcus*, 661 F. App'x at 31-32 ("[A] plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that . . . her age was the 'but-for' cause of the adverse action."); *Cocca-Rau v. Standard Insurance Company*, 2020 WL 4207442, at *8 (S.D.N.Y. July 22, 2020) (finding that a single allegation that plaintiff "was replaced by much younger . . . workers" was insufficient to give rise to inference of discriminatory causality).

The weakness in Plaintiff's claim is even more profound given the failure to allege any significant age difference between Plaintiff and Cortsidis or that those who were engaged in the alleged discrimination or engaged in the hiring were aware of the age difference.  *See Marcus*, 661 F. App'x at 33 (holding that amended complaint was properly dismissed when it did not allege facts that would support inference that decision to replace older employee with younger

one was based on age or even provide the age of the new employee); *Pustilnik v. Battery Park City Auth.*, 2019 WL 6498711, at *5-6 (S.D.N.Y. Dec. 3, 2019) (dismissing age discrimination claim when replacement was within the same protected class and plaintiff did not allege that supervisors knew about age discrepancy between her and her replacement).[2]

Plaintiff also claims an indirect inference can be drawn that Mercedes's conduct in 2018 was based on Plaintiff's age because in 2013 Mercedes received an instruction to reduce his staff because of budget cuts and because beginning in that year Mercedes targeted older non-Hispanic employees to leave the school.  Dkt. No. 40 ¶¶ 14-16.  Leaving aside conclusions, Plaintiff's factual allegations fail to support an inference that he was the victim of any discrimination.  The allegations are reminiscent of the allegations in *Marcus*, 61 F. App'x at 32, that "the defendant

---

[2] Bernstein also alleges that prior to the fall of 2011, during more than 15 years as a teacher employed by the DOE, he received no disciplinary letters and all Effective or Satisfactory ratings, and that it was only in the fall of 2011 that Mercedes began a campaign to harass him "with many unwarranted disciplinary letters each year and almost all ineffective ratings."  Dkt. No. 40 ¶ 20; *see also id.* ¶ 10 (alleging that Plaintiff was rated as Satisfactory as a physical education teacher in the 2009-2010 and 2010-2011 school years before he was reassigned in December 2011).  The allegations that Bernstein had not received disciplinary letters before and had been rated Satisfactory in earlier years, however, do not alone support the inference that when he was given disciplinary letters for conduct in later years and was rated less than Satisfactory in those later years, the school's reason for doing so were discriminatory.  *See Bastian v. New York City Dept. of Educ.*, 2008 WL 2930529, at *9 (S.D.N.Y. July 29, 2008) (holding that history of satisfactory evaluations did not establish that unsatisfactory evaluation was pretext for discrimination) (citing *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 718 (2d Cir. 1994)).  Indeed, the timing set forth in the amended complaint tends to undercut any inference of discrimination.  Plaintiff alleges that it was during the 2013-2014 school year, *i.e.*, well after Mercedes allegedly began targeting Plaintiff, that Mercedes began "targeting older teachers and other staff in favor of younger staff members at the school," Dkt. No. 40 ¶ 13, and then only as a result of an event in March 2013—the notification to Mercedes that he had to reduce his staff because of budget cuts, *id.* ¶ 16.  The first arguably age-based comment Plaintiff alleges that Mercedes made, or that was made in his presence, began in November 2015, when Mercedes asked him when he was going to retire.  *Id.* ¶ 24.  If Mercedes began targeting Plaintiff in the fall of 2011, then, that undercuts the inference that Plaintiff's age—he was 48 at the time—was the but-for cause of the Unsatisfactory evaluations.  *See Lively v. WAFRA Investment Advisory Group, Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) ("[T]he but-for causation standard for discrimination claims applies not only at trial but at the pleading stage as well.").

was attempting to get 'younger' by terminating older employees and replacing them with younger hires" and those in *Lively v. WAFRA Investment Advisory Group, Inc.*, 6 F.4th 293, 306 (2d Cir. 2021), that the plaintiff "was victim to a 'campaign to purge [WAFRA] of elder workers'" that the Second Circuit in both cases held to be insufficient to establish a plausible inference of age discrimination.  In *Lively*, the Second Circuit held that even allegations that provided "the names and positions of several executives who were fired or were forced out" were insufficient when the plaintiff "offer[ed] no details that would support any inference of age discrimination, such as the executives' ages or the dates and stated reasons for their terminations."  *Lively*, 6 F.4th at 306.

Plaintiff's allegations suffer from the same flaws as the allegations in *Lively* and *Marcus*. Although Plaintiff identifies a number of "older non-Hispanic employees" who he alleges were "targeted . . . to leave the school," Dkt. No. 40 ¶ 16, he does not allege facts that would support an inference that any of these employees—much less all—were the victims of age discrimination.  There is no allegation of the age of the employees other than that they were "older" (without any allegation as to whom any individual employee was older than).  Plaintiff also does not allege the reasons for their termination other than the assertion that they had "relatively high salaries" and that "most of these staff members [were] removed from their positions through trumped up charges, forced retirement, or forced medical leave."  *Id.* ¶ 17.  But the latter is a conclusion—without any allegation of fact, there is no basis upon which a court or a factfinder could determine whether the "charges" which led to the departure of an employee were "trumped up" or genuine.  *See Chukwurah v. Stop & Shop Supermarket Co. LLC*, 354 F. App'x 492, 495 (2d Cir. 2009) (finding plaintiff's contention that poor performance reviews were "of 'dubious origin'" without merit because plaintiff "fail[ed] to identify any evidence that

refutes defendants' characterization of his performance"); *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 576-77 (S.D.N.Y. 2010) (finding unsubstantiated claim that poor performance reviews were fabricated "unavailing").  Moreover, that the employees had "relatively high salaries" would provide a non-discriminatory rationale for their departure and not a discriminatory reason.  *See MacKinnon v. City of New York Human Res. Admin.*, 441 F. App'x 16, 17 (2d Cir. 2011) ("An employment decision motivated by pension costs, even when strongly correlated with age, is not an ADEA violation."); *Wade v. New York City Dept. of Educ.*, 2014 WL 941754, at *10 (S.D.N.Y. Mar. 10, 2014) ("Terminating an employee for one with a lower salary in and of itself is not a basis on which to establish an age discrimination claim, even if age and salary are largely related.").  Tellingly, with a single exception, Plaintiff does not identify comparators for any of the other "older" employees who were "removed from their positions," which would create an inference that the reasons for the removal was on the basis of age and not on the basis of some other genuine and non-pretextual reason.  Plaintiff's allegation is "vague and conclusory."  *Lively*, 6 F.4th at 306.

The single exception is Linda White, who is alleged to have been approximately 64 years old and who "ultimately" left the school.  Dkt. No. 40 ¶ 14.  Plaintiff alleges that she "received consistently negative ratings during the 2013-2014 school year, [while] her younger Hispanic counterpart Mr. Alvarez received positive ratings."  *Id.*  He also alleges that "younger Hispanic teachers who were ineffectively rated were not pushed out of the school."  *Id.*  However, Plaintiff does not allege any facts to support the inference that Alvarez is an appropriate comparator for White or that the reason why White received negative ratings while Alvarez received positive ratings was because of their age differences as opposed, for example, to the quality of their teaching.  The allegation is little more than "a variation on a common (and patently defective)

19

pleading technique in cases brought under federal and local antidiscrimination statutes: 'I am (fill in protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class).'" *Ochei v. Mary Manning Walsh Nursing Home Co.*, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011); *see also Grillo v. New York City Transit Authority*, 291 F.3d 231, 235 (2d Cir. 2002); *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001). Although Plaintiff alleges that younger Hispanic teachers who were ineffectively rated were not pushed out of the school, he does not allege that those teachers were similarly situated to older teachers who were forced out.

Indeed, the inferences that Plaintiff attempts to draw are once again even more attenuated based on the differences in timing. Plaintiff alleges that the actions against White occurred during the 2013-2014 school year. The disciplinary notices against Plaintiff issued in November 2018. There is no basis alleged in the complaint to infer that whatever motivated the actions against White also led to, or were the but-for causes of, the disciplinary notices years later. As the Supreme Court has held, but-for causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1739 (2020). The test for finding but-for causation "directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id.*; *see also Richards v. City of New York*, 2021 WL 3668088, at *4 (S.D.N.Y. Aug. 18, 2021) ("Absent an allegation . . . from which the Court could infer a discriminatory motive on the part of his employer, Plaintiff fails to state a claim under Title VII."); *Lively*, 6 F.4th at 306-07 (holding that an allegation that defendant stated that he needed to replace older employees like plaintiff with younger employees was not sufficient to establish but-for causation when separated

in time by months from plaintiff's termination).[3]  Plaintiff's amended complaint provides no

basis on which the Court can draw a plausible inference that, if Plaintiff's age were different, he

would not have received the disciplinary notices in question.

### 2.   Hostile Work Environment and Constructive Discharge

Plaintiff also asserts that the same conduct that gives rise to his adverse employment

action claim, as well as all of the hostile conduct that preceded it, created a hostile work

environment and states a claim for hostile work environment and constructive discharge.  The

Court previously dismissed this claim.  The new allegations in the amended complaint do not

change the result.

A hostile work environment under the ADEA, as under Title VII, is one in which "the

workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

pervasive to alter the conditions of the victim's employment."  *Kassner*, 496 F.3d at 240 (internal

quotation marks omitted) (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir.

1999)); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (Sotomayor, J.).  A

plaintiff must allege that the conduct "(1) was objectively severe or pervasive in that it created an

environment that a reasonable person would find hostile or abusive; (2) created an environment

that the plaintiff subjectively perceived as hostile or abusive; and (3) occurred because of the

plaintiff's protected characteristic."  *Sherman v. Fivesky, LLC*, 2020 WL 2136227, at *5

(S.D.N.Y. May 5, 2020).  "[A] plaintiff need not show that her hostile working environment was

---

[3] Plaintiff also alleges that the disciplinary notices and letters were false, but "an employee's disagreement with [his] employer's evaluation of [his] performance is insufficient to establish discriminatory intent."  *Mattera*, 740 F. Supp. 2d at 576; *see also Lee-Walker v. N.Y.C. Dept. of Educ.*, 220 F. Supp. 3d 484 (S.D.N.Y. 2016) (dismissing with prejudice constitutional claim arising out of disagreement with supervisors' concerns reasonably related to legitimate pedagogical concerns); *Dasrath v. Stony Brook University Medical Center*, 965 F. Supp. 2d 261 (E.D.N.Y. 2013) (dismissing with prejudice Title VII and NYSHRL claims, including that defendant fabricated poor performance evaluations).

both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (internal citation and quotation marks omitted).

Objective severity "can be determined only by looking at all of the circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Second Circuit has "cautioned against setting the bar too high" in the context of a motion to dismiss a claim of hostile workplace, and a plaintiff is therefore not required to recount an exhaustive list of specific acts that contributed to a hostile workplace. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). However, minor incidents do not give rise to a finding of hostile work environment. *See Bernstein*, 2020 WL 6564809, at *7.

Constructive discharge, meanwhile, "occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work environment that forces an employee to quit involuntarily." *Serricchio v. Wachovia Sec., LLC*, 658 F.3d 169, 185 (2d Cir. 2011). Working conditions are considered intolerable "if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.*; *see also Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987). "The effect of a number of adverse conditions in the workplace is cumulative . . . [b]ecause a reasonable person encounters life's circumstances cumulatively and not individually." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir. 1996). However, the standard for finding a constructive discharge is a

high one—more stringent than for finding a hostile workplace on its own and involves something more than hostile work environment allegations.  *See, e.g.*, *Silva-Markus v. N.Y.C. Dep't of Educ.*, 2020 WL 5819555, at *7 (S.D.N.Y. Sept. 30, 2020) ("Constructive discharge is, in effect, 'an aggravated case of . . . hostile work environment.'" (internal citation omitted)).

The Court previously concluded that Plaintiff's allegations did not give rise to a claim of hostile work environment or constructive discharge.  With respect to the claim for a hostile work environment, Plaintiff must allege facts establishing that Defendants "created a working environment that was hostile to [the plaintiff] on the basis of" his membership in the proscribed class, here the class of persons over 40.  *Cruz*, 202 F.3d at 571; *see also Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 513 (S.D.N.Y. 2010) (Lynch, J., sitting by designation) (holding that a hostile work environment "is [not] something that exists in some absolute way, like poisonous chemicals in the air, affecting everyone who comes in contact with it").  Plaintiff has not alleged facts to establish that he suffered a hostile work environment on the basis of his age.

 Plaintiff has not alleged that Defendants criticized him in degrading terms based on his age; that they made invidious comments about the age of others; or that defendant or others in his age group were treated differently from those outside their age group.  *See George v. Pro. Disposables Int'l, Inc.*, 2016 WL 3648371, at *6 (S.D.N.Y. June 1, 2016) ("Plaintiff does not describe any comments, discriminatory or otherwise, about his age.  There is no suggestion that plaintiff's age was ever discussed in connection with his termination; that he was ever criticized based on his age; that he was treated less favorably than younger employees; that he was ultimately replaced with a younger person; or that any of the events leading to his termination involved his age in any way."); *Gorzynski*, 596 F.3d at 102 (holding that environment must be

"objectively hostile and abusive"); *see also Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir. 2006) (holding that to establish hostile work environment claim, plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult"); *Harris*, 510 U.S. at 23 (holding that court must consider factors including frequency of discriminatory conduct, severity of conduct, and "whether it unreasonably interferes with an employee's work performance").  At most, Plaintiff alleges that Defendant Mercedes asked him about his retirement plans, several years before he made the decision to retire but—as indicated above— such allegations do not give rise to an inference that Defendants took their actions based on Plaintiff's age.

Plaintiff also has not alleged hostile acts that are "more than episodic," *i.e.*, that are "sufficiently continuous and concerted to be deemed pervasive."  *Littlejohn*, 795 F.3d at 321. The thrust of Plaintiff's complaint is that in 2011 a softball coaching position was taken from him and his job position was changed to that of health teacher; in 2015 his physical education classes were taken from him and given to a substitute teacher and he was given a substitute teacher schedule including math classes; and after his return to the school after having suffered a herniated disc he was kept away from physical education classes and given only health classes. Interspersed with those allegations are claims that he received disciplinary letters to his file and poor evaluations that he should not have received—in 2013, letters about his attire; in the 2015- 2016 school year, an Ineffective evaluation; disciplinary letters that Plaintiff alleges were false in some sort or another on March 1, 2016 and June 27, 2016; and then, after he returned to work, disciplinary letters on February 12, 2017 and March 17, 2017, and the disciplinary letters in November 2018 arising from conduct alleged to have occurred during the 2017-2018 school year and during the 2018-2019 school year.  He also alleges that at one point (in September 2012), his

sabbatical application was withheld, at another (in June 2018), he was docked a day from his sick

bank and Mercedes refused to sign off on retroactive medical leave, and at another point (in the

fall of 2018) Mercedes refused to approve his Line of Duty injury disability time.

What is missing from the amended complaint, however, is any allegation that these

events were in any way connected or related to one another such as to make them "continuous

and concerted."  Each is disconnected in time from the other and based on idiosyncratic facts.

Construing the complaint in favor of Plaintiff, the DOE changed his job responsibilities and,

after it did so, he received a single negative evaluation and a series of disciplinary letters.  That

does not make out a hostile work environment claim.  *See Littlejohn,* 795 F.3d at 32; *see also*

*Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (concluding that no

hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from

meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily

imposed duties outside of her responsibilities, threw books, and sent rude emails to her");

*Davis-Molina v. Port Auth. of N.Y. & N.J.*, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011)

(finding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate

"avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks,

among other factors, was not enough to show that defendants' conduct was sufficiently severe or

pervasive), *aff'd*, 488 F. App'x 530 (2d Cir. 2012); *Demoret*, 451 F.3d at 150 (finding that close

monitoring of budget and criticism for tardiness "even though male employees could skip

meetings with impunity" did not make out a hostile work environment claim).

Finally, although the Court views all of the acts alleged in the amended complaint

cumulatively, Plaintiff's pleading does not plausibly allege that Defendants engaged in

"deliberate action [with the] intent to create intolerable work conditions."  *Silberman v. Alt.*

*Dialysis Mgmt. Servs., LLC*, 2018 WL 4335510, at *4 (S.D.N.Y. Sept. 11, 2018) (quoting

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000)).   Plaintiff attempts

to stitch together what otherwise are an unrelated set of acts, prompted by separate conduct by

Plaintiff, through the generalized allegation that "Mercedes began targeting [him] during the

summer of 2011."  Dkt. No. 40 ¶ 18.  Based on that premise, Plaintiff asks the Court to hold that

it is a plausible inference that all of Defendants' subsequent conduct can be tied together as part

of a single campaign to create a hostile work environment and to cause him to leave MS 390.

But the allegation that Mercedes "targeted" Plaintiff is a conclusion and not a fact.  The factual

allegations do not support the conclusion.  The amended complaint "does not create the

reasonable inference that Bernstein's alleged constructive discharge in November 2018 was

based on the cumulative effect of the events beginning in 2015 when he did not retire any time

proximate to 2015 and the ensuing acts of which he complains were only sporadic thereafter."

*Bernstein*, 2020 WL 6564809, at *9.  There is no well-pleaded allegation that any of the acts,

including those prior to 2018, were based on Plaintiff's age or that any are related to one another.

Plaintiff does allege that he received a disciplinary notice in September 2018 and two

disciplinary letters in November 2018 and that he avoided an Unsatisfactory end of year rating

only by resigning.  Dkt. No. 40 ¶¶ 38-39, 41.  But even if those events forced Plaintiff to retire,

they cannot give rise to a constructive discharge claim.  As long as there are no adverse follow-

on effects, an employer has the right to deliver a disciplinary notice to an employee and to rate

him unsatisfactory without subjecting itself to an employment discrimination lawsuit, for the risk

of discipline and an unsatisfactory rating is an ordinary term and condition of employment.  An

employer has to retain the right to deliver notices, even if it does not have the right—without the

risk of a discrimination lawsuit—to impose the adverse consequences.  It follows that an

employee cannot convert the employer's exercise of that authority into a constructive discharge act by the voluntary act of resignation. "[M]ere dissatisfaction with job assignments or criticism from a supervisor do not, in themselves, give rise to a constructive discharge claim." *Kalp v. Kalmon Dolgin Affiliates of Long Island, Inc.*, 2013 WL 1232308, at *9 (E.D.N.Y. Mar. 27, 2013); *see also Culmone-Simeti v. N.Y.C. Dep't of Educ.*, 2019 WL 2409736, at *3-4 (S.D.N.Y. June 7, 2019) (dismissing constructive discharge where plaintiff chose not to seek redress through the disciplinary process or otherwise challenge the alleged unwarranted performance ratings); *Reiss*, 2019 WL 4688639, at *11.

## II.    The Court Dismisses Plaintiff's State Law Claims Against DOE and Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims Against Mercedes

Plaintiff also asserts state law causes of action against the DOE and Mercedes under the NYSHRL and NYCHRL.

Section 3813(1) of the New York Education Law provides in general terms that no action may be maintained "against any school district, board of education, board of cooperative educational services, or school" unless a written verified notice of claim has been presented to the governing board of the district or school within three months after the accrual of the claim. N.Y. Educ. Law 3813(1). The law prohibits an individual from maintaining a claim under the NYSHRL or the NYCHRL against a school or the DOE unless a timely notice of claim has been filed. *See Bernstein*, 2020 WL 6564809, at *11 (citing cases). Plaintiff does not dispute that he did not file a timely notice of claim pursuant to the New York Education Law and that the NYSHRL and NYCHRL claims against DOE accordingly are barred. Defendants' motion to dismiss must be granted as to these claims against the DOE.

The parties do not dispute that the notice of claim statute does not apply to Mercedes who, as a DOE principal, is not considered to be an "officer of a school district" under the

27

statute.  *Id.*  The Court reaches the same conclusion with respect to these state law claims as

pleaded in the amended complaint as it did with respect to the original complaint.  "Although the

Court has analyzed the allegations according to the ADEA standards of liability and statute of

limitations, the Court has not analyzed the NYSHRL and NYCHRL discrimination claims that

contain additional allegations of racial discrimination and are subject to a longer statute of

limitations.  The state courts are better suited to analyze those claims in the first instance."  *Id.*

(citing *Milord-Francois v. N.Y.S State Off. of Medicaid Inspector Gen.*, 2020 WL 5659438, at

*24 (S.D.N.Y. Sept. 23, 2020)).

## CONCLUSION

Defendants' motion to dismiss the ADEA claim and the NYSHRL and NYCHRL claims

is GRANTED and those claims are dismissed with prejudice.[4]  The state law claims against

---

[4] Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading
. . . by leave of the court . . . and leave shall be freely given when justice so requires."  Fed. R.
Civ. P. 15(a).  The Second Circuit "strongly favors liberal grant of an opportunity to replead after
dismissal of a complaint under Rule 12(b)(6)."  *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d
274, 276 (2d Cir. 2006).  However, "a district court has discretion to deny leave for good reason,
including futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v.
Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and "[t]he decision to grant leave to
amend is within the sound discretion of the trial court," *Bay Harbour Mgmt. LLC v. Carothers*,
474 F. Supp. 2d 501, 502 (S.D.N.Y. 2007) (citation omitted).  Here, Plaintiff has already had a
chance to amend his complaint after it was dismissed previously, and Plaintiff has still failed to
identify any facts that would sustain a federal claim against Defendants or a state claim against
DOE.  As such, the Court dismisses with prejudice because granting leave to amend would be
futile.  *See, e.g.*, *Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp. 2d 364, 373 (S.D.N.Y. 2009)
(dismissing with prejudice where plaintiffs "have already had an opportunity to amend the Initial
Complaint in response to the deficiencies pointed out by the first pre-answer motion to dismiss,"
and plaintiffs failed to cure these deficiencies in their amended complaint "after being given
ample opportunity to do so"); *Al-Qadaffi v. Servs. for the Underserved (SUS)*, 2015 WL 585801,
at *8 (S.D.N.Y. Jan. 30, 2015) (dismissing with prejudice where the plaintiff "has already had
one chance to amend his [c]omplaint, and there is still no indication that a valid claim might be
stated if given a second chance"); *Ganley v. City of New York*, 2017 WL 5508812, at *3
(S.D.N.Y. Apr. 26, 2017) ("Because Plaintiff has already had an opportunity to amend his
complaint and has not corrected the deficiencies, the Court is not inclined to grant Plaintiff
another opportunity.").

Mercedes are dismissed without prejudice based on the Court's decision not to exercise supplemental jurisdiction.  To the extent that the amended complaint could be deemed to allege a claim for retaliation, that claim is not defended in Plaintiff's opposition papers and is deemed abandoned.  *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 144 (2d Cir. 2016).

The Clerk of Court is respectfully directed to close the case.


SO ORDERED.

Dated: September 27, 2021
        New York, New York                    _____
                                                        LEWIS J. LIMAN
                                                United States District Judge